## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| **MARK ANDREW ZARALLO, JR. AND COGENT RENEWABLES, LLC** | |
| **PLAINTIFFS** | **CIVIL ACTION NO. 4:23-CV-00683-SDJ** |
| **VERSUS** | |
| **JOSHUA MCCOY, MCCOY EQUITY HOLDINGS, LLC, DYNAMIC GROUP, LLC, DSI ENERGY SOLUTIONS, LLC, CHAD MITCHELL AND UNITED COMMUNITY BANK** | |
| **DEFENDANTS** | |

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE OR TO TRANSFER

NOW INTO COURT, through undersigned counsel, come Defendants, Joshua McCoy, McCoy Equity Holdings, LLC, Dynamic Group, LLC, DSI Energy Solutions and Chad Mitchell (the "McCoy Defendants"), who pursuant to Federal Rule of Civil Procedure Rule 12(b)(2) and 12(b)(3) move to dismiss Plaintiffs', Mark Andrew Zarallo, Jr. and Cogent Renewables, LLC, claims against them for lack of personal jurisdiction and improper venue. In the alternative, Defendants move for a transfer to the Middle District of Louisiana under 28 U.S.C. § 1404.

As more fully set forth below, this court does not have personal jurisdiction over the McCoy Defendants, and this district is an improper venue as a substantial part of the events or omissions giving rise to the claim did not occur in this district and a substantial part of the property that is subject of this action is not located in this district. In the alternative, and should this court find that it does have personal jurisdiction over any of the McCoy Defendants and that venue is proper in this district, this court should transfer this case to the Middle District of Louisiana for the

convenience of the parties and witnesses and in the interest of justice, as this action could have been brought there.

## FACTUAL BACKGROUND

Plaintiff, Cogent Renewables, LLC ("Cogent"), is a Delaware limited liability company. (Doc. 1 at ¶ 9). Plaintiffs allege that Cogent operated out of offices in Gunter and Frisco, Texas, at all relevant times. (Doc. 1 at ¶ 9). However, when McCoy Equity Holdings, LLC was still the 70% owner of Cogent and the Manager, Cogent operated out of Baton Rouge, Louisiana. (Ex. A (Affidavit of Joshua McCoy) at ¶ 10; Ex. B (Affidavit of Chadwick Mitchell) at ¶ 14). Prior to MEH's joining Cogent, Cogent had no real operations, and the address listed in the Operating Agreement for Mark Andrew Zarallo, Jr. ("Zarallo") in Gunter, Texas is a residence. (Ex. A at ¶ 11; Doc. 1-1, Ex. C). In 2022, Cogent began renting a small space in Frisco, Texas. (Ex. A at ¶ 16; Ex. B at ¶ 8).

Defendant McCoy Equity Holdings, LLC ("MEH") is a Louisiana limited liability company with its principal place of business in Baton Rouge, Louisiana. Its sole member is Joshua McCoy. (Ex. A at ¶ 2). From August 2021 to July 9, 2023, MEH was the 70% owner and manager of Cogent, and Zarallo was the 30% owner of Cogent. (Doc. 1-1 at Section 3.01 and Schedule of Members; Ex. A at ¶ 5). Any reference to Josh McCoy as manager rather than MEH is an error. (Doc. 1-1 at Ex. C).

Defendant Joshua McCoy ("McCoy") is a citizen of the state of Florida. During the relevant time period but prior to the Plaintiffs' filing of the Complaint, McCoy changed his domicile from Louisiana to Florida. (Ex. A at ¶ 1). McCoy maintains residences in both Florida and Louisiana, but the residence in Florida is McCoy's primary residence, and McCoy has obtained a Florida drivers' license and files taxes in Florida. (Ex. A at ¶ 1).

Defendant Dynamic Group, LLC ("Dynamic") is a Louisiana limited liability company with its principal place of business in Baton Rouge, Louisiana. Its sole member is McCoy. (Ex. A at ¶¶ 2-3). Defendant DSI Energy Solutions, LLC is a Louisiana limited liability company with its principal place of business in Baton Rouge, Louisiana. Its sole member is MEH. (Ex. A at ¶¶ 2-3).

Defendant Chadwick Mitchell is a citizen of the State of Louisiana. (Ex. B at ¶ 1).

United Community Bank ("UCB") is a Louisiana state-chartered bank that is wholly owned by Community Bancorp of Louisiana, Inc. with branches in Lafourche, Terrebonne, Ascension, St. John the Baptist and East Baton Rouge. (Doc. 19). Cogent and MEH interacted with UCB's Coursey Office located in East Baton Rouge Parish, Louisiana, and the UCB loan documents were executed by McCoy, as the Manager of MEH, the Member of Cogent in Baton Rouge, Louisiana. (Doc. 1-2; Ex. A at ¶ 47).

Throughout the Complaint, Plaintiffs have only alleged that Defendants' actions occurred in Baton Rouge, Louisiana. (Doc. 1 at ¶¶ 1, 57, 100). Neither McCoy nor Mitchell has visited the Cogent office in Texas. (Ex. A at ¶ 17; Ex. B at ¶ 9). Mark Andrew Zarallo, Jr. ("Zarallo") does not allege where he was located when the December of 2022 phone calls occurred, but Mitchell was located in Baton Rouge, Louisiana for those phone calls. (Doc. 1 at ¶¶ 104-106; Ex. B at ¶ 41). Zarallo has alleged that he was in New York when he discussed the UCB loan with Mitchell. (Doc. 1, ¶ 114-115). Zarallo also signed the Loan Resolution using DocuSign on his phone, while in New York. (Doc. 1, ¶ 126). Mitchell was in Baton Rouge, Louisiana when he talked with Zarallo regarding the UCB loan in March of 2023. (Ex. B at ¶ 43). For any of the other phone calls or video conferences, Mitchell was located in Baton Rouge, Louisiana. (Ex. B at ¶¶ 3, 44, 46).

Negotiations relating to McCoy acquiring a 70% membership interest in Cogent and amending Cogent's operating agreement occurred via email between Zarallo and McCoy while

McCoy was in Baton Rouge, Louisiana or while working at the time in Puerto Rico. (Doc. 1, ¶ 38; Ex. A at ¶ 4). Zarallo also met with McCoy in Baton Rouge, Louisiana in August of 2021, to discuss the Operating Agreement, and Zarallo also met with Mackenzie Ledet at her office in Baton Rouge, Louisiana. (Doc. 1, ¶ 57; Ex. A at ¶ 9). MEH executed the Amended Limited Liability Company Agreement of Cogent Renewables (the "Operating Agreement") in Baton Rouge, Louisiana. (Ex. A at ¶ 7). The revisions to the Cogent operating agreement by MEH's lawyers were performed in Baton Rouge, Louisiana. (Ex. A at ¶ 8).

When MEH first became the 70% owner, Zarallo spent several days each month in Baton Rouge, Louisiana to meet regarding Cogent. He thereafter periodically travelled to Baton Rouge where he also used an office to perform work for Cogent where MEH performed its duties for Cogent. (Ex. A at ¶ 15; Ex. B at ¶ 7).

Zarallo often worked onsite for Cogent projects, like when he was in New York. (Ex. A at ¶ 21; Ex. B at ¶ 13). Cogent's work on the Mulligan Project for DSI was performed in Illinois. (Doc. 1, ¶ 32) (Ex. A at ¶ 18; Ex. B at ¶ 10). Cogent's work for Inovateus Solar, LLC ("Inovateus") was performed on a project located in Lebanon, Ohio, and the contract is governed by Indiana law. (Ex. A at ¶ 19; Ex. B at ¶ 11). Cogent performed work at other projects in Colorado, Louisiana, Nevada and New York. (Ex. A at ¶ 20; Ex. B at ¶ 12). The Operating Agreement indicates that the potential projects of Cogent were in Maryland, Georgia, Alabama, Florida and Louisiana; none were in Texas. (Doc. 1-1 at p. 36).

Cogent's accounting information and books were kept at the office in Baton Rouge, Louisiana. (Ex. A at ¶ 10; Ex. B at ¶ 14). According to Zarallo, Zarallo "had no visibility as to where money that came into Cogent originated from, or the internal accounting of such deposits and transfers, since that was entirely and exclusively within the control of McCoy and MEH."

(Doc. 1, ¶ 68). Plaintiffs also alleged that only MEH could cut and sign checks for Cogent. (Doc. 1, ¶ 71). Any alleged failure of MEH to provide Zarallo with "visibility" into the accounting information would have occurred in Baton Rouge, Louisiana where the accounting and books of company were kept.

Cogent maintained two checking accountants at Hancock Whitney which MEH opened at a location in Baton Rouge, Louisiana. (Ex. A at ¶ 13; Ex. B at ¶ 4). Bills were paid and checks were written from Cogent's checking account in Baton Rouge, Louisiana. (Ex. A at ¶ 14; Ex. B at ¶ 15; Doc. 1 at ¶ 71). Any transfers from Cogent's accounts as alleged in the Complaint occurred in Baton Rouge, Louisiana. Any alleged misappropriations of money would have been withdrawn from these two checking accounts. (Ex. A at ¶¶ 13-14, 41; Ex. B at ¶¶ 15, 37-38, 40).

Although Plaintiffs allege that the Baton Rouge address was not a Cogent business address and that the McCoy Defendants had not represented to third parties that the Baton Rouge address was an office of Cogent, Plaintiffs later acknowledge that prior to MEH's withdrawal, payments for Cogent had not been sent to the Cogent address in Texas. (Doc. 1, ¶¶ 111, 161). Plaintiffs also had previously alleged that Zarallo had no "visibility into what was being paid, what was being received . . ." (Doc. 1, ¶ 71). According to the Plaintiffs, Zarallo only received confirmation of receipt of client payments, because the internal accounting was "entirely and exclusively within the control of McCoy and MEH." (Doc. 1, ¶ 68). Aside from electronic payments, payments received by Cogent were sent to the Baton Rouge address. (Ex. A at ¶ 14; Ex. B at ¶ 15). Further, any alleged "misclassification" of capital contributions would have occurred in Baton Rouge, Louisiana where the administrative and accounting functions for Cogent was performed. (Ex. A at ¶ 10; Ex. B at ¶ 14).

Under the Operating Agreement, MEH was entitled to be reimbursed for overhead

allocable to Cogent, which included but was not limited to the payment of employees of MEH who performed work for Cogent. If MEH delegated any of its duties to Cogent to any other entity or person, MEH was to be entitled to reimbursement from Cogent for payments made to that delegated entity or person. (Doc. 1-1 at Section 3.08).

From December 2022 to May 2023, MEH claimed reimbursements for services performed for Cogent by Ramsey Green, Paul DeClouet, Joel Salvaggio, Mitchell and Rachel Lee. (Ex. A at ¶ 25; Ex. B at ¶ 20). The total of these invoices is $170,899.40. (Ex. A at ¶ 31; Ex. B at ¶ 26). These amounts were paid by Cogent in June of 2023. (Doc. 1, ¶ 177).

Joel Salvaggio no longer works for MEH, but lives in the Baton Rouge, Louisiana area. (Ex. A at ¶ 28; Ex. B at ¶ 23). Dylan Jenks, a former employee of DSI, also lives in the Baton Rouge, Louisiana area. (Ex. A at ¶ 29; Ex. B at ¶ 24).

Plaintiffs alleged that Cogent submitted invoices to DSI totaling $3,415,502.51, which only comprised the actual cost of doing the work. (Doc. 1 at ¶ 88). Cogent actually charged DSI a 10% markup, as Zarallo had proposed. (Doc. 1 at ¶ 85; Ex. A. at ¶ 32; Ex. B at ¶ 27). DSI has paid for the majority of work completed by Cogent and submitted for invoicing to DSI. (Ex. A at ¶ 33; Ex. B. at ¶ 28). For example, $418,141.49 was transferred to Cogent on or around December 31, 2021, as payment for some of the DSI invoices. (Ex. A at ¶ 34; Ex. B. at ¶ 29).The invoices that remain outstanding between DSI and Cogent are dated January 2022 to March 2022 and total $352,441.51. (Ex. A at ¶ 35; Ex. B. at ¶ 30).

Even if it were true (which McCoy and DSI deny) that DSI and McCoy never paid Cogent for the services received (Doc. 1 at ¶ 88) and that failure to pay could form the basis of a conversion claim, DSI's and McCoy's actions would have occurred in Baton Rouge, Louisiana or Florida, and Cogent's work for DSI would have been performed in Illinois. (Ex. A at ¶¶ 3, 14, 18, 22; Ex. B at

¶¶ 2-3, 5, 10, 15, 36).

MEH had the authority to enter into contracts on behalf of Cogent, borrow from any lender willing to lend money to Cogent and purchase, sell, lease, exchange, partition, mortgage, pledge or transfer or encumber any movable and immovable property of Cogent. (Doc. 1-1 at Section 3.01(b)). An act of the members of Cogent required a majority of the voting power of the members at a meeting (or through written consent) in which a quorum was present. A majority of the voting power of the members constituted a quorum. (Doc. 1-1 at Section 6.02). MEH was a 70% owner in Cogent; therefore, its vote on any action was sufficient to constitute an act of the members of Cogent. Under Section 4.06 of the Operating Agreement, any payment of money by a member which was not an agreed upon Capital Contribution was deemed to be a loan to Cogent. (Doc. 1-1 at Section 4.06). Further, money could be loaned to Cogent upon authorization by the members, and MEH's vote on an action was sufficient to constitute an act of the members of Cogent. (Doc. 1-1 at Section 4.06). In other words, by default under the Operating Agreement, any money paid by MEH to Cogent was a loan, and MEH's approval was required to change the classification of such loaned money to a Capital Contribution. The Operating Agreement also contains the terms and conditions of any such loan which was to be made on demand with an interest rate of 5% over the prime rate, or at a rate agreed upon by the members. (Doc. 1-1 at Section 4.06).

Plaintiffs have alleged that McCoy caused Dynamic to pay Cogent $491,942.67 in May of 2023. (Doc. 1, ¶ 150). Plaintiffs have also alleged that Cogent's accounting records show that the payment was booked as a loan from Dynamic. (Doc. 1, ¶ 150). Despite neither Dynamic nor McCoy being a member of Cogent, Plaintiffs are alleging that this properly booked loan from *Dynamic* is a capital contribution to Cogent. Even if the loan was improperly booked as a loan, such actions would have occurred in Baton Rouge by MEH, McCoy or Dynamic. (Ex. A at ¶¶ 3,

37-39; Ex. B at ¶¶ 3, 32-34). Further, any repayment by Cogent of that loan would have occurred in Baton Rouge (by both Cogent paying and Dynamic receiving). (Ex. A at ¶¶ 13-14, 23, 41; Ex. B at ¶¶ 4, 6, 15, 37, 40).

Plaintiffs have alleged that McCoy caused a third party, Paul Rainwater, to be paid. (Doc. 1, ¶ 98). Plaintiffs' conclusory allegations regarding Rainwater are made on "information and belief." (Doc. 1, ¶ 98). Even if it were true that Rainwater was improperly paid $50,000, such payments would have been made by Cogent in Baton Rouge, Louisiana. (Doc. 1, ¶ 98; Ex. A at ¶¶ 13-14; Ex. B at ¶¶ 3-4, 15). Further, according to Plaintiffs, the payments would have been made to Rainwater who they allege was located in Washington, D.C. (Doc. 1, ¶ 98).

Zarallo's story is filled with inconsistencies. Zarallo alleges that in an email in negotiating the Operating Agreement, he told McCoy that he wanted Cogent to decrease its financial obligations to MEH as Cogent began making profits. (Doc. 1, ¶ 28). Yet, the entire Complaint is filled with Zarallo's complaints about MEH doing exactly that: repaying loans made to Cogent. Zarallo insists that McCoy paid "millions of dollars" to Cogent (Doc. 1, ¶ 76) while MEH was manager of Cogent. Yet, Zarallo also alleges that MEH (although alleged by Zarallo as McCoy) invested a mere $50,000 into Cogent. (Doc. 1, ¶ 144). In reality, from August of 2021 to May of 2023, McCoy or Dynamic loaned Cogent over $1.2 million. (Ex. A at ¶ 36). Cogent repaid only $430,000 of those loans in June of 2023. (Ex. A at ¶ 40; Ex. B at ¶ 39). The resulting balance plus outstanding interest (and reflecting a discounted amount) is the amount reflected in the promissory note executed in July of 2023 for $906,354.56. (Doc. 1, ¶ 169; Ex. A at ¶ 42). Even if it were true that McCoy caused Cogent to transfer $1.3 million in the 30 days preceding MEH's withdrawal, such transfers would have occurred in Baton Rouge from the Cogent bank account (in Baton Rouge) to a McCoy Defendant bank account (in Baton Rouge) (although Plaintiffs do not even

allege which Defendant allegedly received the money). (Doc. 1, ¶ 160, Ex. A at ¶¶ 13, 22-23; Ex. B at ¶¶ 4-6).

MEH executed the $906,354.56 promissory note ("Promissory Note") with Cogent as borrower and Joshua McCoy as lender in Santa Rosa Beach, Florida. (Ex. A at ¶ 43; Doc. 9-6, p. 3). The Promissory Note also has a Louisiana choice-of-law clause and East Baton Rouge Parish, Louisiana as the choice of venue. (Doc. 9-6, p. 3). MEH executed the assignment of the Inovateus Solar, LLC Account Receivable ("Inovateus Receivable") from Cogent to Joshua McCoy in Florida. (Ex. A at ¶ 45). MEH also executed the Resolution of Cogent Renewables, LLC declaring that Cogent was indebted to Joshua McCoy and that MEH was authorized to execute the Promissory Note and assignment in Florida. (Ex. A at ¶ 44; Doc. 9-6, p. 3). MEH sent the letter to Inovateus on July 8, 2023, notifying Inovateus of the assignment from New Orleans, Louisiana to Inovateus in South Bend, Indiana. (Ex. A at ¶ 46).

Plaintiffs also fail to allege any real details for the so-called "impersonation" of Angela Zarallo, who is not a plaintiff in this matter. The allegations are all made on "information and belief." (Doc. 1, ¶¶ 163-164). The Plaintiffs fail to allege which individual actually sent the supposed email on June 30, 2023, and to which of Cogent's "contractual counterparties" the email was sent. Plaintiffs further allege, again on information and belief, that one of the McCoy Defendants must have then deleted the June 30, 2023 email. Plaintiffs' completely speculative allegations boil down to: someone (without naming who) sent an email to someone else (without naming who), and this email that was supposedly sent no longer exists. Plaintiffs do allege that prior to MEH's withdrawal, MEH had control of the email system. (Doc. 1, ¶ 164). Plaintiffs have not alleged enough information to determine where any of these events occurred, let alone that any of the actions occurred in Texas; however, as for all of the allegations relating to the McCoy

Defendants, any actions would not have occurred in Texas. The email system was controlled by MEH, in Baton Rouge, Louisiana, and only Angela Zarallo, who is not a plaintiff, was possibly located in Texas.

Although Plaintiffs do not separately distinguish their harms and causes of action, many of the causes of action should be asserted by Cogent, rather than Zarallo individually. Under Delaware law, where the company's funds have been depleted, the corporation is harmed directly and the member/stockholder is only harmed derivatively. *Dietrichson v. Knott*, No. CV 11965-VCMR, 2017 WL 1400552, at *4 (Del. Ch. Apr. 19, 2017) (*citing Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031, 1034 (Del. 2004)). A member of a limited liability company in Delaware may only bring a derivative action if the managers/members with authority to do so have refused to bring an action or if an effort to cause those managers/members is unlikely to succeed. 6 Del. C. § 18–1001. As Zarallo is the current sole member and manager of Cogent, he is able and did bring these causes of action on behalf of Cogent. The majority of the causes of action, like breach of fiduciary duty, common law fraud, fraud by nondisclosure, quantum meruit, tortious interference, conversion, involve harms allegedly suffered by *Cogent*, because they involve the assets of Cogent. However, the Complaint confuses the two Plaintiffs in, for example, Paragraph 153 by stating that "*Drew* would not have been in a position . . . ." and "The sole cause of *Drew's* predicament . . . ." rather than Cogent. (emphasis added). The member must allege how he would be harmed directly by these causes of action independently from the harm to company. *Dietrichson* at *4 (*citing Tooley*, 845 A.2d at 1039).

The Complaint alleges that McCoy worked with UCB to offload McCoy's debt onto Drew, which completely ignores the law and reality. (Doc. 1, ¶ 230). Cogent is the borrower on the line of credit with UCB. (Doc. 1-2). The Plaintiffs have alleged otherwise that the *DSI* line of credit

was paid off by the Cogent line of credit, not a debt of McCoy, personally. (Doc. 1, ¶¶ 117, 135, 257). Zarallo has only signed a *resolution* authorizing certain actions; Zarallo has no personal liability from the UCB loan. (Doc. 1-2 at pp. 2-3). The line of credit is guaranteed by Joshua McCoy, personally. (Doc. 1-2, pp. 13-16). Dynamic granted a security interest in its bank account located at UCB as security for the loan. (Ex. A at ¶ 48; Doc. 1-2, pp. 24-26). Therefore, if UCB does attempt to collect on the line of credit, Cogent, McCoy and DSI would be harmed; Zarallo would only be harmed derivatively through Cogent.

## LAW AND ARGUMENT

### 1. Personal Jurisdiction

When the defendant challenges personal jurisdiction, the plaintiff has the burden of proving jurisdiction exists. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006); *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022). "This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction." *Id.* The court is not required to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). *See also Aeritas, LLC v. Darden Corp.,* No. 6:20-CV-00938-ADA, 2021 WL 4868430, at *2 (W.D. Tex. Oct. 18, 2021) (Allegations made "on information and belief" are legal conclusions disguised as factual allegations). "There is personal jurisdiction if the forum state's long-arm statute extends to the nonresident defendant and the exercise of jurisdiction comports with due process." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (internal citations omitted). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Danziger,* 24 F.4th at 495 (*citing Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018)).

The due process test has evolved into two prongs which require: (1) the defendant must have certain minimum contacts with the forum state (2) such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 134 S.Ct. 746, 754, 187 L.Ed.2d 624 (2014). "The defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court in the forum state." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987).

Personal jurisdiction may be divided into specific jurisdiction and general jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, n. 15, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). Plaintiffs have not appeared to assert that the assertion of general jurisdiction is proper on any of the Defendants. A state exercises specific personal jurisdiction over a defendant when the suit arises out of or is related to the defendant's contacts with the forum. *Id.* at 472-473. The Fifth Circuit has applied a three-step analysis to determine specific jurisdiction: (1) whether the defendant has minimum contacts with the forum state; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 585 (5th Cir. 2010).

The party invoking the court's jurisdiction has the burden of proving the defendant has sufficient minimum contacts to justify personal jurisdiction. Where a plaintiff brings multiple claims against a defendant that arise out of different forum contacts of the defendant, the plaintiff must establish specific jurisdiction for each claim. *Danziger,* 24 F.4th at 495 (citation omitted).

### a.  Breach of Contract

For a breach of contract claim the relevant facts are where "the contract was formed, where

it would be performed, whether the plaintiff's business is conducted solely in the forum, the hub of the parties' activity, where payments under the contract were tendered, any choice of law provision in the contract, and the foreseeability that a material part of the obligations under the contract would be performed in the forum." *Special Indus., Inc. v. Zamil Grp. Holding Co.*, 578 F. App'x 325, 331 (5th Cir. 2014). Merely contracting with a resident of a forum does not establish minimum contacts. *Danziger*, 24 F.4th at 500 (*citing Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). Where a defendant has not performed any of its obligations in Texas, the contract did not require performance in Texas and the contract is centered outside of Texas, the plaintiff's "unilateral activities in Texas" do not establish minimum contacts. *Danziger*, 24 F.4th at 500; *Moncrief*, 481 F.3d at 311. *See also Special Indus., Inc.* 578 F. App'x at 331 ("The contracts were formed outside of Texas, did not expressly provide for work to be done in Texas, the SII individuals performing work under the contract did not do so solely from Texas, Texas was not the hub of the parties' activities, the contracts' choice of law provisions did not provide for Texas law, and payments under the contract were not made to Texas.") Additionally, "[a]n exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law." *Danziger*, 24 F.4th at 500; *Moncrief*, 481 F.3d at 312. Where a contract does not provide sufficient minimum contacts, a promissory estoppel claim should also lack sufficient contacts when the promissory estoppel claim is based on the same contract. *Eagle Metal Prod., LLC v. Keymark Enterprises, LLC*, 651 F. Supp. 2d 577, 592, n. 54 (N.D. Tex. 2009) (citing cases).

Plaintiffs have alleged that MEH and McCoy[1] breached their obligations under the

---

[1] McCoy denies that he was a member of Cogent, a signatory of the Operating Agreement or an officer of Cogent to which a breach of contract cause of action can be asserted against him. MEH was named as the manager of Cogent. (Doc. 1-1 at Section 3.01). Any reference to Josh McCoy, personally, being the manager is an error.

Operating Agreement. (Doc. 1, ¶¶ 270-278). The Operating Agreement did not establish a principal

place of business for Cogent. (Doc. 1-1). None of MEH's duties were required to be performed in

Texas, and the Operating Agreement's only mention of a state, was the state of Delaware. ("The

books and records of [Cogent] shall be kept at a location chosen by the Manager, which can be

within or without the State of Delaware.") (Doc. 1-1 at Section 8.01(a)). MEH kept the books of

Cogent in Baton Rouge, Louisiana. (Ex. A at ¶ 10; Ex. B at ¶ 14). Likewise, the Operating

Agreement is to be interpreted under the laws of the state of Delaware. (Doc. 1-1 at Section 11.04).

The Fifth Circuit in *Danziger,* 24 F.4th at 500, distinguished its earlier decision in *Cent.*

*Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). The Fifth Circuit noted

that it found personal jurisdiction in *Central Freight* where the New Jersey carrier knew that it was

affiliating itself with a company based primarily in Texas and that the New Jersey carrier would

have known that many of the Texas carrier's customers would come from Texas. *Danziger,* 24

F.4th at 500. The Fifth Circuit had found that reaching out to a resident of Texas with the aim of

establishing a long-term association with the resident and with the intended result of causing

economic activity within Texas should have anticipated being haled into court in Texas on a breach

of contract claim, even though it had a relatively brief physical presence in Texas. *Danziger,* 24

F.4th at 500 (*citing Central Freight,* 322 F.3d at 383). In *Central Freight,* the defendant had sent

two representatives to Texas which eventually led to the negotiation and execution of their

contract. *Central Freight,* 322 F.3d at 382. The plaintiff's Texas location was also strategically

advantageous for the defendant, which suggested that the defendant had purposefully availed itself

of doing business in Texas. *Id.* In *Danziger,* like here, however, the only connection between the

contract and Texas was the plaintiff.  *Danziger,* 24 F.4th at 502.

In *Moncrief,* 481 F.3d at 312-313, the plaintiff was a Texas corporation, and the defendants

14

were organized under the laws of the Russian federation with their principal place of business in Russia. The plaintiff argued that there were minimum contacts because the defendants knew that plaintiff was a Texas corporation, approved of the plaintiff's substantial performance in Texas and sent an executive to Texas in furtherance of the plaintiff's performance. *Id.* at 312. The plaintiff argued that the defendant (Zapsib) could have foreseen that the plaintiff would perform its duties in Texas, but the Fifth Circuit found that Texas was not the hub of the parties' activities. *Id.* Similarly, in *Special Indus., Inc.*, 578 F. App'x at 329, the Fifth Circuit found that personal jurisdiction did not exist over a foreign defendant who contracted with a Delaware corporation doing business in Texas. The court noted that the plaintiff did not merely exist in Texas; it performed work in other countries and states. *Id.* at 330. Also, the contracts did not require any work by either party to be performed in Texas. *Id.*

However, in the present case, MEH (through McCoy) never entered Texas and never contemplated that any of its duties were to be performed in Texas. (Ex. A at ¶¶ 12, 17; Ex. B at ¶ 9). The potential projects listed in the Operating Agreement do not contain any projects listed in Texas (but include Maryland, Georgia, Alabama, Florida and Louisiana). (Doc. 1-1 at Schedule 1, Potential Projects). Cogent's work on the Mulligan Project was performed in Illinois; other projects were located in Colorado, Ohio, Louisiana, Nevada and New York. (Doc. 1, ¶ 32) (Ex. A at ¶¶ 18-20; Ex. B at ¶¶ 10-12). Zarallo performed much of his work for Cogent in the field where the projects were located, and he also performed work at the office in Baton Rouge, Louisiana. (Ex. A at ¶¶ 15, 21; Ex. B at ¶¶ 7, 13).

In *Trois,* 882 F.3d at 489, the Fifth Circuit found that the only Texas contacts were the defendant's conference calls negotiating the contract while the plaintiff was in Texas. The claim was centered on a contract that the defendants executed and performed in Ohio, and any partial

performance by the plaintiff in Texas was insufficient to establish jurisdiction in Texas. *Id*. Like the above cited cases, the "mere fortuity" that Zarallo (and not even Cogent) happened to be a Texas resident (who may or may not have even been in Texas when any alleged conduct occurred) is not sufficient to establish personal jurisdiction on the breach of contract claim.

### b.  <u>Intentional Torts</u>

To establish personal jurisdiction in intentional tort cases it is "insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff. A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Danziger,* 24 F.4th at 495 (*citing Walden v. Fiore*, 571 U.S. 277, 286, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014)). A defendant may be subjected to personal jurisdiction in Texas when the defendant "commits a tort in whole or in part in [Texas]." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 229 (5th Cir. 2012) (citations omitted).

In *Walden,* 571 U.S. at 289, the United States Supreme Court rejected the Ninth Circuit's reasoning to establish minimum contacts by shifting the focus from the defendant's contacts with the forum to the defendants' knowledge of the plaintiffs' "strong forum connections." The Supreme Court stated that the "[defendant's] actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." *Id.* Further, mere injury to a plaintiff in Texas is not sufficient to establish personal contacts by a defendant in Texas, because a plaintiff cannot be the only link between the defendant and the forum. *Id.* at 290. The Supreme Court in *Walden* also clarified the "effects test," and stated that the effects must connect the defendant's conduct to the state and not just the plaintiff who lives there. *Danziger,* 24 F.4th at 496 (*citing Walden*, 571 U.S. at 288).

Courts allowing personal jurisdiction based on the "effects test" is rare. *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 486 (5th Cir. 2008). The "effects of an alleged intentional tort are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum." *Id.* (citations omitted) (emphasis original). The Fifth Circuit has declined to allow the exercise personal jurisdiction even for an intentional tort where the only basis is the alleged harm to a Texas resident. *Id.*

Plaintiffs have not alleged any of the Defendants are domiciled in Texas; they are all citizens of Louisiana, except for McCoy who is a citizen of Florida. Further, Plaintiffs have not alleged that any of the actions of the Defendants were committed in Texas. Only Zarallo is a resident of Texas. Cogent is a Delaware limited liability company. (Doc. 1, ¶ 9). While its current sole member may be a resident of Texas, at all relevant times in the Complaint until July 9, 2023, MEH owned 70% of Cogent and was its manager. (Doc. 1, ¶ 157; Doc. 1-1 at Section 3.01 and Schedule of Members). None of MEH's actions were committed in Texas.

For a conversion specifically, the acts are committed where the defendant refuses to return the thing allegedly converted. *Pervasive Software Inc.*, 688 F.3d at 229-230 (citing cases). The alleged item must be in Texas when the conversion occurs. In *Pervasive,* 688 F.3d at 230, the Fifth Circuit found that the conversion, if it occurred at all, happened in Germany when the defendant refused to return the item, so the Texas district court lacked personal jurisdiction for the conversion claim. Here, Plaintiffs have alleged that McCoy[2] converted Cogent's funds and accounts receivable. (Doc. 1, ¶ 303). However, Plaintiffs also allege that McCoy, had "exclusive access to Cogent's bank account and complete control over the company's financials and operations."

---

[2] The Complaint alleges that McCoy was the majority member and manager of Cogent in its conversion cause of action. (Doc. 1, ¶ 303). However, MEH was actually the majority member and manager of Cogent. (Doc. 1-1 at Section 3.01 and Schedule of Members; Josh Affidavit at ¶ 5).

Plaintiffs also allege that McCoy has continued to exercise dominion and control over Cogent's "funds receivable." Assuming this is a typo which means funds and accounts receivable, any such control would be in Louisiana, and any actions taken to establish that control would have occurred in Louisiana, where MEH operates. Plaintiffs do not more than vaguely and in a conclusory manner allege that McCoy's "affiliated entities" also committed such actions. To the extent that these conclusory allegations would even support a cause of action against Dynamic or DSI, those companies are also Louisiana companies which operate in Louisiana. (Ex. A at ¶ 3).

As to any claims relating to McCoy directing Cogent to perform work for DSI without paying Cogent (which is denied), the proper venue for a conversion claim is the place where the failure to pay occurred, which in this instance would be Louisiana (where DSI and MEH are located), or the location of the contract performance (Illinois).

*Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 648-649 (W.D. Tex. 2019) is distinguishable, because the defendant purposefully targeted funds held in escrow in Texas. The defendants conspired to keep money in a Texas escrow account so that they could steal the funds. One of the defendants also created a Texas limited liability company so that he could create fraudulent invoices that were used to misappropriate funds from the Texas escrow account. Here, any funds that were allegedly misappropriated were held in bank accounts in Louisiana and the companies that allegedly misappropriated the funds are Louisiana entities with bank accounts in Louisiana.

In *Ice Melon, LLC v. Morgan*, No. 4:19-CV-1291, 2020 WL 12863808, at *1 (S.D. Tex. Jan. 14, 2020), *report and recommendation adopted*, No. CV H-19-1291, 2020 WL 12863809 (S.D. Tex. Jan. 29, 2020), the Southern District of Texas refused to find personal jurisdiction over the defendant where the plaintiff alleged that defendant had lured him into investing into a business

by making false representations to open a cosmetic clinic in California. The plaintiff was a Texas limited liability company wholly owned by a citizen of Mexico (Mireles) (the plaintiff alleged that Mireles was also a resident of Texas, because he spent summers there). *Id.* The defendant met with Mireles in Mexico and never in Texas. *Id.* at *4. The court stated that any emails that the defendant sent to Mireles were fortuitously opened in Texas, because Mireles just happened to be in Texas. *Id.* at *4. The court also found that Mireles's contacts with Texas could not be used to establish personal jurisdiction over the defendant. *Id.* at *4.

This case is closer to *Ice Melon* than *ESPOT, Inc. v. MyVue Media, LLC*, 492 F. Supp. 3d 672, 685 (E.D. Tex. 2020). In *ESPOT,* the court stated that someone "who makes affirmative representations over the phone to the Texas-based co-founder of a Texas company should reasonably anticipate facing suit in Texas based on claims arising out of those representations." *Id.* at 690 (*citing Trois,* 882 F.3d at 491). However, here, Cogent is a Delaware company which had its principal office until July 2023 in Baton Rouge, Louisiana. (Doc. 1 at ¶ 9; Ex. A at ¶¶ 5-6, 10). Zarallo has not alleged that he was located in Texas for any of the alleged misrepresentations; however, he has alleged that he was in New York (phone call) and Baton Rouge, Louisiana (in person). (Doc. 1, ¶¶ 57, 114-115). Zarallo also worked onsite for many Cogent projects, so it should not be assumed that Zarallo was in Texas or that McCoy, Mitchell or MEH knew that he was in Texas for any given communication. Like in *Ice Melon*, any communication with Zarallo in Texas was fortuitous, and does not establish the basis for personal jurisdiction over McCoy, Mitchell or MEH. Plaintiffs have not alleged any specific fraudulent representations made by Dynamic or DSI, so there is no basis for personal jurisdiction over them.

*Shopf v. Griggers*, No. CV 17-10958, 2018 WL 1453214, at *2 (E.D. La. Mar. 23, 2018), involved the sale of shares of four companies, where the plaintiff shareholder was a Louisiana

resident. The plaintiff alleged that the defendants lied to her about the price the buyer was willing to pay to purchase shares. However, the court found that the acts of collusion, self-dealing, fraud, breach of contract and breach of fiduciary duty had all occurred outside of Louisiana. The plaintiff alleged that notices were tortious because they contained fraudulent information. The court found that the notices did not form the basis of her claims, even if they did contain a false sales price. *Id.* Likewise here, many of the communications alleged by Plaintiffs were merely notifications of actions already allegedly accomplished by one of the McCoy Defendants. Plaintiffs allege that at the teleconference meeting on July 7, 2023, Zarallo was informed of actions that MEH had taken/or would immediately take. (Doc. 1, ¶¶ 167-169). Plaintiffs have also alleged that the "Cogent Exit Analysis" was a summary of amounts that were owed to McCoy. (Doc. 1, ¶ 175). This "communication" is another notice of events that had already occurred which were the proper classification of the loans (rather than capital contributions as alleged by Plaintiffs). Plaintiffs also allege that, on information and belief, by the time that Mitchell and Zarallo had the conversation (where Zarallo was in New York) regarding the UCB loan, the loan documents had already been executed. (Doc. 1, ¶ 116). Like in *Shopf,* these communications do not form the basis of the claims; the allegedly tortious *actions* of the Defendants which do form the basis of the claims were all allegedly performed outside of Texas.

For common law fraud, the Plaintiffs name McCoy and UCB specifically. (Doc. 1, ¶¶ 228-232). Other than a general statement of "McCoy and his cohorts," neither Dynamic, DSI nor Mitchell are mentioned, and Plaintiffs have failed to allege any false statements made by them in connection with the common law fraud cause of action. For the cause of action of fraud by nondisclosure, the Plaintiffs name McCoy, MEH, Mitchell and UCB specifically. (Doc. 1, ¶¶ 255-260). Again, other than a general allegation of "McCoy Defendants" or "McCoy and cohort [sic],"

Plaintiffs have failed to allege any false statements made by DSI or Dynamic in connection with the fraud by nondisclosure cause of action. Although MEH was the member of Cogent, Plaintiffs' statutory fraud and promissory estoppel causes of action relating to the alleged inducement of executing the Operating Agreement are asserted against McCoy, individually (again with the exception of one allegation of "McCoy and his cohorts"). (Doc. 1, ¶¶ 261-268, 284-290). Plaintiffs have not specifically alleged any false statements by DSI, Dynamic and Mitchell relating to the inducement to enter into the Operating Agreement.

Plaintiffs have alleged only two of its causes of action against DSI specifically, neither of which are tort causes of action (although, even here, the allegations focus on "McCoy received valuable services" and "McCoy directed Cogent")). (Doc. 1, ¶¶ 280-283 (quantum meruit); 291-295 (unjust enrichment)). Plaintiffs have specifically alleged no causes of action against Dynamic, other than a general reference to the McCoy Defendants. Therefore, even if the alleged commission of an intentional tort outside the state of Texas was sufficient to find personal jurisdiction over a non-resident, no such justification exists or has been alleged for DSI and Dynamic.

In *Panda,* the Fifth Circuit refused to find personal jurisdiction where the plaintiff had alleged that the defendant had interfered with a contract, knew that its actions would cause harm in Texas and intended to cause such harm. The Fifth Circuit stated:

> If we were to accept Appellants' arguments, a nonresident defendant would be subject to jurisdiction in Texas for an intentional tort simply because the plaintiff's complaint alleged injury in Texas to Texas residents regardless of the defendant's contacts, and would have to appear in Texas to defend the suit "no matter how groundless or frivolous the suit may be." *Wallace*, 778 F.2d at 395. Such result would completely vitiate the constitutional requirement of minimum contacts and purposeful availment. We refuse to ignore the limits of specific jurisdiction to allow Appellants to sue Appellee in the district court based on Appellants' self-serving allegations when the "potential" injury claimed by Appellants resulted from interference with financing agreements that have nothing to do with Texas except for the mere fortuity that Appellants reside there.

*Panda,* 253 F.3d at 870.

It would be more egregious to force the McCoy Defendants to be subject to personal jurisdiction in Texas, because only Zarallo has at all times been a Texas resident. Prior to July 9, 2023, Cogent was operated out of Baton Rouge, Louisiana and would have felt any effects of the alleged torts in Baton Rouge, Louisiana and not in Texas, where its 30% owner resided (but may have not even been located at the time the alleged acts were committed). Also, as discussed above, Zarallo has failed to allege how he would be harmed directly independent of any harm to Cogent.

Allegations of tortious interference with a forum resident's contract alone are insufficient to establish specific personal jurisdiction. *RapidDeploy, Inc. v. RapidSOS, Inc.*, No. 1:22-CV-00612-LY, 2022 WL 3045649, at *5 (W.D. Tex. Aug. 1, 2022), *report and recommendation adopted*, No. 1:22-CV-612-LY, 2022 WL 17814234 (W.D. Tex. Aug. 26, *2022*) (*citing Panda,* 253 F.3d at 868-69; *Southmark Corp. v. Life Invs., Inc.*, 851 F.2d 763, 772 (5th Cir. 2001)). Where the other party to the underlying contract is not a Texas resident, the underlying contract was not to be performed in Texas or to be governed by Texas law, and the only connection to Texas is that the plaintiff is a resident of Texas, the Fifth Circuit has found insufficient contacts. *Southmark,* 851 F.2d at 772-773. In *Southmark,* the Fifth Circuit found that nothing in the record indicated that the defendant aimed its allegedly tortious activities at Texas or even that Texas was the focal point of the tortious activity. *Id.* Further, the court stated that the plaintiff's principal place of business being in Texas was a mere fortuity. *Id.* at 773. The court in *RapidDeploy,* 2022 WL 3045649 at *6 (citing cases), found insufficient contacts even where the underlying contract was governed by Texas law.

Plaintiffs have alleged that the McCoy Defendants have interfered with Cogent's contracts with its vendors and subcontractors by failing to pay them. (Doc. 1, ¶ 298). Plaintiffs have not alleged the locations of the vendors and subcontractors that MEH allegedly caused Cogent to fail

to pay, nor where those contracts were performed nor where payment was to be made. None of Cogent's contracts were to be performed in Texas.

Plaintiffs have also alleged that all Defendants have interfered with Cogent's payment of the Inovateus Receivable. However, any such actions would have occurred in Baton Rouge, Louisiana where the Defendants are located or in Indiana where Inovateus was located. The underlying contract between Inovateus and Cogent was performed in Ohio, and the contract is governed by Indiana law. (Ex. A at ¶ 19; Ex. B at ¶ 11). Therefore, the only contact with Texas was that *Zarallo* (who is not a party to the Inovateus contract) happened to reside in Texas.

Plaintiffs have also failed to allege how DSI and Dynamic have interfered with Cogent's vendors and subcontractors. Further, other than conclusory allegations, Plaintiffs have failed to allege how DSI and Dynamic have interfered with Cogent's payment of the Inovateus Receivable. Even if this allegation was sufficient to form the basis of the cause of action of tortious interference, any actions of MEH would have occurred in Baton Rouge, Louisiana.

c.  **Conspiracy/RICO**

The Fifth Circuit has not yet ruled on whether 18 U.S.C. § 1965(b) or (d) (under the Racketeer Influence and Corrupt Organizations Act ("RICO") provides for nationwide service of process. *ESPOT, Inc.* 492 F. Supp. 3d at 685. This district has followed the majority of other courts and determined that it is Section 1965(b) that confers nationwide service of process. *Id.* at 685. Under that Section, the court must first establish personal jurisdiction under Section 1965(a) over one defendant, before it can apply the nationwide service of process provision to other defendants, in order to establish personal jurisdiction over them. *Id.*

Additionally, 18 U.S.C. § 1965(b) contains another requirement that the "ends of justice require that other parties residing in any other district . . . ." The Fifth Circuit has not determined

the meaning of "ends of justice." *ESPOT, Inc.,* 492 F.Supp. 3d at 686. However, the majority of courts addressing the issue have determined that there must be no other district in which a court would have personal jurisdiction over all of the defendants. *Fernandez-Lopez v. Hernandez*, No. DR-19-CV-46-AM/CW, 2020 WL 9396487, at *14 (W.D. Tex. Nov. 20, 2020)(citing cases). Justice does not require that this action be brought in this district, because all of the defendants are subject to personal jurisdiction in Louisiana and venue is also proper in the Middle District of Louisiana.

The Fifth Circuit has not recognized that personal jurisdiction over one conspirator is enough to establish personal jurisdiction over a separate co-conspirator (or the "conspiracy theory" of personal jurisdiction). *Chow v. United States*, No. 20-30503, 2021 WL 3438365, at *2 (5th Cir. Aug. 5, 2021); *Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004). Rather, the plaintiff must show that the alleged conspiracy arose out of each co-conspirator's purposeful contacts with the forum state. *WorldVentures Holdings, LLC v. Mavie*, No. 4:18CV393, 2018 WL 6523306, at *10 (E.D. Tex. Dec. 12, 2018) (*citing Delta,* 99 F.App'x at 5; *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995)); *Bar Grp., LLC v. Bus. Intel. Advisors, Inc.*, 215 F. Supp. 3d 524, 539 (S.D. Tex. 2017) (citing cases). None of the Defendants are subject to personal jurisdiction in Texas. However, should this court find that one but not all of the Defendants is subject to personal jurisdiction, this court should not find that it has jurisdiction over the alleged co-conspirators just because Plaintiffs have alleged a civil conspiracy.

2. **Venue**

Under 28 U.S.C. § 1391(b), venue is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving

24

rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

If venue is not proper under one of the three sections, as Section 1391 exclusively governs whether venue exists in a given forum, the case must be dismissed or transferred under 28 U.S.C. § 1406(a). *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 56, 134 S.Ct. 568, 577, 187 L. Ed. 2d 487 (2013).

Section 3 is inapplicable, here, as venue is proper in the Middle District of Louisiana for all causes of actions against all Defendants. Plaintiffs have alleged that venue is proper under Section 2 as the Eastern District of Texas is where a "substantial part of the events or omissions giving rise to the claim occurred" and "a substantial part of property that is the subject of the action is situated." (Doc. 1, ¶¶ 212-214).

There is a split of authority as to whether the plaintiff or defendant bears the burden of establishing where venue is proper. 14D Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 1352 (4th ed.). According to Wright and Miller:

> A number of federal courts have concluded that the burden of doing so is on the defendant, since venue is a "personal privilege" that can be waived and a lack of venue should be established by the party asserting it. On the other hand, an equal (perhaps a larger) number of federal courts have imposed the burden on the plaintiff in keeping with the rule applied in the context of subject matter and personal jurisdiction defenses. The latter view seems correct inasmuch as it is the plaintiff's obligation to institute his action in a permissible forum, both in terms of jurisdiction and venue. There seems to be little justification for distinguishing between the two types of defenses in determining the placement of the burden.

(citing cases in the Southern, Northern and Western Districts of Texas which found that plaintiff bears the burden of proof). The Eastern District of Texas has found that the burden lies with the plaintiff. *Langton v. Cbeyond Commc'n, L.L.C.*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003).

Although the Fifth Circuit has not yet ruled on the issue, many courts within the 5th Circuit have determined that the focus for venue purposes for both torts and breach of contract actions should be the acts of the defendant and not plaintiff. *Tesoro Ref. & Mktg. Co. LLC v. C.A.R. Enterprises, Inc.*, No. SA-18-CV-820-XR, 2018 WL 6050603, at *10 (W.D. Tex. Nov. 19, 2018) (*citing ENTU Auto Services, Inc. v. PicMyRide.Biz, LLC*, No. 15-77, 2015 WL 1638179, *4 (E.D. La. Apr. 13, 2015)); *Gray Cas. & Sur. Co. v. Lebas*, No. CIV.A. 12-2709, 2013 WL 74351, at *2 (E.D. La. Jan. 7, 2013) (collecting cases).

## A.  **Breach of Contract**

For an action of breach of contract, proper venue is the place of performance. *Am. Carpet Mills v. Gunny Corp.*, 649 F.2d 1056, 1059 (5th Cir. 1981). Courts also look to "where the contract was negotiated or executed, where it was to be performed, and where the alleged breached occurred." *Dewolff, Boberg & Assocs., Inc. v. Pethick*, No. 4:20-CV-00556, 2020 WL 6822834, at *5 (E.D. Tex. Nov. 20, 2020) (citations omitted).

As stated above regarding personal jurisdiction, the Operating Agreement did not dictate a place of performance, and MEH's duties under the Operating Agreement were performed in Louisiana. (Doc. 1-1; Ex. A at ¶¶ 10, 14; Ex. B at ¶¶ 3, 14-15). The only mention to a state in the Operating Agreement is that the books and records may be kept outside the state of Delaware, as Cogent is a Delaware company and the Operating Agreement is also subject to interpretation under Delaware law. (Doc. 1-1 at Recitals, Sections 8.01(a), 11.04). Any alleged breaches (which are denied) of the Operating Agreement occurred in Louisiana, where MEH operated. (Ex. A at ¶ 3). MEH also executed the Operating Agreement in Louisiana. (Ex. A at ¶ 7). The only connection to Texas is that Zarallo is a resident of Texas. Zarallo's unilateral actions in Texas have no connection to the cause of action, and a substantial part of the events giving rise to the breach of contract claim

did not occur in this district.

**B.  Torts**

Wright and Miller have noted that:

> In tort cases, courts tend to focus on where the allegedly tortious actions took place and where the harms were felt. There is a tendency to conclude that suffering economic harm within a district is not by itself sufficient to warrant transactional venue there. This is probably the correct view, because otherwise venue almost always would be proper at the place of the plaintiff's residence, an option that Congress abolished in the general venue statute 1990.

14D Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3806 (4th ed.). The Fifth Circuit has not directly ruled on this issue. However, many courts within the Fifth Circuit have ruled that the focus of the venue inquiry should be the acts or omissions of the defendant, not where the plaintiff later feels the economic effects of the injury. *Gray Cas. and Sur. Co. v. Lebas*, 2013 WL 74351, at *2 (citing cases).

In *ENTU Auto Servs., Inc. v. PicMyRide.Biz, LLC*, No. CIV.A. 15-77, 2015 WL 1638179, at *4 (E.D. La. Apr. 13, 2015), the court found that venue was not proper in the Eastern District of Louisiana, where the defendant's actions all occurred in the Western District of Louisiana, and the plaintiff's sole argument on venue was that it would feel the economic effects of the defendant's actions in the forum. Here, none of the alleged actions of the McCoy Defendants occurred in Texas. Further, and until July 9, 2023, Cogent itself was operated out of Baton Rouge, Louisiana with its majority member and manager operating in Baton Rouge, Louisiana, so the effects of any of the McCoy Defendants' actions would have been felt in Baton Rouge, Louisiana. Until July 9, 2023, only Zarallo, personally, would have felt the effects in Texas (if he was even in Texas when the conduct occurred).

Like in the personal jurisdiction context, the analysis of a conversion claim focuses on where the conversion occurred. *Wolf Network, LLC v. AML Diagnostics, Inc.*, No. 3:15-CV-3797-

B, 2016 WL 1357742, at *2 (N.D. Tex. Apr. 5, 2016) (*citing Prosperity Bank v. Balboa Music Festival, LLC*, 4:13-CV-0288, 2014 WL 1023935, at *3 (S.D. Tex. Mar. 13, 2014)). Where the defendant is allegedly withholding money that allegedly belongs to the plaintiff, the events giving rise to the conversion claim occur where the defendant is located. *Wolf Network,* 2016 WL 1357742, at *2. As stated above in relation to personal jurisdiction, any alleged conversion would have occurred in Louisiana, where the Defendants reside and operate.

In *Trois,* 882 F.3d at 493-494, the Fifth Circuit found that false communications or fraudulent representations directed to Texas, alone, may establish venue. The plaintiffs' claims must directly derive from those communications and the communications must be directed at the forum state. In *Ice Melon, LLC,* 2020 WL 12863808 at *6, cited above, the Southern District of Texas determined it was not a proper venue, because the connections to Texas were minimal, where a citizen of Michigan allegedly misled a citizen of Mexico into investing into a cosmetic clinic to be opened in California. *Id.* The court also distinguished *Trois*, and stated that while communications directed to Texas can serve as the basis of proper venue, the defendant's emails which just happened to be opened in Texas (while the owner of the Texas company was in Texas) were not directed to Texas. *Id.*

Zarallo has not alleged that he was in Texas when any of the allegedly fraudulent communications by McCoy and Mitchell were made. Zarallo has only alleged that he was in New York, when he talked to Mitchell regarding the UCB loan. (Doc. 1, ¶¶ 114-115). Just because Zarallo may be a Texas resident who allegedly suffered harm in Texas is not sufficient to establish venue in Texas. *Gray Cas. and Sur. Co. v. Lebas*, 2013 WL 74351, at *2. Further, Plaintiffs have not shown that *Cogent* suffered harm in Texas, as it is a Delaware company which was owned 70% and managed by a Louisiana company (MEH) who performed its duties in Louisiana.

In *Michael Russo v. Spencer Barnard*, No. 3:21-CV-165, 2021 WL 5567380, at *1 (S.D. Tex. Nov. 29, 2021), the plaintiff alleged he was induced to move to Illinois by his brother-in-law. In exchange for moving from Texas to Illinois, the plaintiff alleged the defendant promised him a salary of $10,000 a month and a house located in Illinois. The house was purchased, and then the defendant relocated to Florida. *Id.* The plaintiff argued that venue was proper in Texas, because discussions between the plaintiff and defendant occurred while the plaintiff was located in Texas. *Id.* at *2. He also alleged he was in Texas when the employment agreement and conveyance of the Illinois real property were executed, and that he performed his part of the agreements in Texas. *Id.* The Southern District of Texas found that the plaintiff's focus on his own actions and the effects of the defendant's actions were irrelevant. *Id.* (citing cases). Here, allowing Zarallo "to establish venue on the basis of his whereabouts when relevant events occurred would render the venue statute all but meaningless." *Id.* (*citing Lalla v. G&H Towing Co.*, No. CV SA-19-CA-0542-FB, 2019 WL 11626516, at *4 (W.D. Tex. July 26, 2019)).

Further, even if the actions of both the Plaintiffs and Defendants were considered, a substantial part of the events giving rise to the Plaintiffs' tort claims did not occur in Texas. In *Key v. Pat Robertson*, No. CV H-07-4060, 2008 WL 11462865, at *1 (S.D. Tex. Apr. 7, 2008), the court found that even if the alleged misrepresentations were made, they were made in Virginia, even though they may have been communicated to a plaintiff in Texas. There, a student at Regent University Law School in Virginia was suspended. Among other claims, the student asserted a claim for fraudulent inducement. He alleged that he was a resident of Texas when he applied to and was recruited by Regent, and a representative from Regent called him to offer him a scholarship and encourage him to attend the school. He also alleged that the suspension was in direct conflict with Regent's alleged misrepresentations. *Id.* The court found that Texas' connection

29

to the lawsuit in its entirety was very minimal, as even the events which had a connection to Texas did not even occur in Texas. *Id.* at *2. *See also Ancel v. Rexford Rand Corp.,* 1994 WL 539287, at *3 (N.D. Tex. Sept. 19, 1994) ("The relevant events and omissions in this case occurred primarily, if not exclusively, in Illinois; Plaintiff's receipt of letters and phone calls in Dallas does not constitute a "substantial part" of the events and omissions that give rise to his claim.")

## C. **Property**

Plaintiffs have alleged that venue is proper under 28 U.S.C. § 1391(b)(2), because the Eastern District of Texas is where "a substantial part of the property that is subject of the action is situated." Plaintiffs allege that the accounts receivable are located in this district. (Doc. 1, ¶ 214). There is very little case law discussing the meaning of "property" in connection with Section 1391(b)(2). However, the Southern District of Texas discussed the meaning of "property" in connection with Section 1391(f)(1), which has almost identical language as Section 1391(b)(2), and which establishes a proper venue where "a substantial part of the property that is subject of the action is situated." *Falcoal, Inc. v. Turkiye Komur Isletmeleri Kurumu*, 660 F. Supp. 1536 (S.D. Tex. 1987).[3] There, the court rejected the plaintiff's argument that the term property included the corporate assets and its business reputation. *Id.* at 1543. The court found that "the more reasonable construction of the clause would make it applicable to suits involving property disputes or in rem actions, not, as here, to suits alleging financial damages to a corporation." *Id.* The court was concerned that including corporate assets in the definition of "property" "would make venue proper in the district in which a corporation's assets lie any time a corporation sues claiming it has been financially damaged." *Id.* In *Am. High-Income Tr. v. AlliedSignal Inc.*, No. CIV.A. 00-690

---

[3] Plaintiffs have cited *Wheeling Steel Corp. v. Fox*, 298 U.S. 193, 56 S. Ct. 773, 80 L. Ed. 1143 (1936), for the proposition that the situs of accounts receivable for tax purposes should be Texas. However, the Fifth Circuit has stated that the situs of intangible property may be different for tax purposes, garnishment or venue. *Af-Cap Inc. v. Republic of Congo*, 383 F.3d 361, 371 (5th Cir.), *decision clarified on reh'g*, 389 F.3d 503 (5th Cir. 2004).

GMS, 2002 WL 373473, at *3 (D. Del. Mar. 7, 2002) (*citing Falcoal,* 660 F.Supp. at 1543), the District of Delaware found that books, records and assets of a corporation were not "property" within the meaning of Section 1391(b)(2). Therefore, even if it were true that Cogent's assets were located in the Eastern District of Texas, those assets cannot support the assertion of venue in this district.

### D. <u>RICO</u>

The RICO statute also affects venue. Like with personal jurisdiction, the Fifth Circuit has not ruled on the definition of "ends of justice" as that phrase relates to venue. Some courts find that 18 U.S.C. § 1965(b) operates as a waiver of the venue requirements where the "ends of justice so require." *Anchor Glass Container Corp. v. Stand Energy Corp.*, 711 F. Supp. 325, 330 (S.D. Miss. 1989). The Southern District of Mississippi applied a factor test to determine the meaning of "end of justice" which included the presence of at least one defendant who was properly in front of the court and no other forum in which all of the defendants could appear. The court determined that since venue would be proper in the Southern District of Ohio as to all defendants, the ends of justice did not require the Southern District of Mississippi to exercise jurisdiction over all of the defendants. *Id.* at 331.

Other courts require that there be no other federal district that can exercise venue or jurisdiction over all of the defendants. *Hamilton v. Bus. Partners, Inc.*, No. CIV.A. 96-2366, 1997 WL 639022, at *1 (E.D. La. Oct. 15, 1997). Regardless, there is an alternative forum where all of the defendants are subject to personal jurisdiction and venue is proper: the Middle District of Louisiana. 18 U.S.C. § 1965 does not require that this case be maintained in this district and this case may be transferred to its proper district: the Middle District of Louisiana.[4]

---

[4] A case filed in the wrong venue can be dismissed or transferred to a district in which venue is proper under 28 U.S.C. § 1406.

**3.  <u>Transfer of Venue</u>**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008). Under Section 1404, the burden on the defendant to justify a transfer of venue is less demanding than to warrant a *forum non conveniens* dismissal. *Id.* at 314.

The Fifth Circuit has adopted the private and public interest factors enunciated in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Volkswagen*, 545 F.3d at 315. "The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *Id.*

In the alternative and in the event that this court finds that venue is proper in the Eastern District of Texas, the McCoy Defendants request that this case be transferred to the Middle District of Louisiana where venue is proper as to all Defendants.

**a.  <u>Relative Ease of Access to Sources of Proof</u>**

As discussed above, most of the events occurred in Baton Rouge, Louisiana, and the

documents and computer systems relating to those events are located in Baton Rouge, Louisiana. There is very little tying this action to Texas, except that the individual Plaintiff resides there. Zarallo has bemoaned his lack of visibility into Cogent's records and inability to obtain documents from UCB. This factor weighs in favor of transferring the case to the Middle District of Louisiana.

### b. <u>Availability of Compulsory Process and Cost of Attendance for Willing Witnesses</u>

While Plaintiff Zarallo lives in Texas, Joshua McCoy is subject to the subpoena power of the Middle District of Louisiana and the other Defendants are Louisiana citizens who conduct business in the Baton Rouge area. Joel Salvaggio, a former MEH employee named in the Complaint lives in the Baton Rouge area and is subject to the subpoena power of the Middle District of Louisiana. (Ex. A at ¶ 28; Ex. B at ¶ 23). Dylan Jenks, a former DSI and Dynamic employee, who may be called as a witness, also lives in the Baton Rouge area. (Ex. A at ¶ 29; Ex. B at ¶ 24). It is unknown whether either would be a willing or unwilling witness.

The convenience of non-party witnesses is accorded greater weight than that of employee witnesses and parties. *In re Triton Ltd. Sec. Litig*., 70 F. Supp. 2d 678, 690 (E.D. Tex. 1999). The two non-party witnesses that have been identified would have to travel from the Baton Rouge area to Sherman, Texas which is a significant distance. As for party witnesses, Plaintiffs have named Zarallo, his wife, his father and one possible Cogent employee (whose location is not alleged in the Complaint). Apart from Mitchell and McCoy, Plaintiffs have made allegations regarding Ramsey Green (a MEH employee in Baton Rouge) and three UCB employees (Talisha Johnson, Prentis Wilks and Heath Mire). This factor weighs in favor of transfer to the Middle District of Louisiana, where fewer witnesses (especially the two non-party witnesses) would have to travel.

### c. <u>Court Congestion</u>

The median time from filing of a case to disposition in the Eastern District of Texas is only

slightly shorter (8.5 months) than the Middle District of Louisiana (10.9 months), suggesting this is a neutral factor.[5] However, this factor is the most speculative and should not alone outweigh all other factors. *Texas Data Co. v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 645, 2011 WL 98283 (E.D. Tex. 2011) (citation omitted).

### d.   <u>Local Interest</u>

A Delaware company and a Texas resident have asserted causes of actions against two individuals and four companies all of which reside or do business in Louisiana. The Middle District of Louisiana has much more local interest in that the majority of the parties are located there. Further, as discussed above, Cogent performed work on no projects in Texas, while it did perform work in Louisiana. (Doc. 1, ¶ 180; Ex. A at ¶ 20; Ex. B at ¶ 12). Also as discussed above, none of the alleged actions occurred in Texas, while many occurred in Baton Rouge, Louisiana.

### e.   <u>The Familiarity of the Law and Conflicts of Law</u>

Plaintiffs have alleged that the breach of contract claim is subject to Delaware law. The courts will apply the law of the state of incorporation for the corporate veil piercing allegations, and all of the McCoy Defendant entities are Louisiana entities. *Jefferson Pilot Broadcasting Co. v. Hilary & Hogan, Inc.*, 617 F.2d 133, 135 (5th Cir. 1980). Plaintiffs have also asserted a RICO cause of action under federal law. Plaintiffs have alleged several causes of action under Texas law. Both courts are capable of applying federal law and equally capable of applying Delaware law. Therefore, this factor is neutral.

Overall, considering the above factors, the Middle District of Louisiana is clearly more convenient and should this court find that the Eastern District of Texas is a proper venue, this case should be transferred to the Middle District of Louisiana.

---

[5] *See* Table N/A—U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (June 30, 2023) available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0630.2023.pdf.

**4.** <u>**Conclusion**</u>

This court lacks personal jurisdiction over the McCoy Defendants and this district is not a proper venue. The court should dismiss this case for lack of personal jurisdiction and venue, or in the alternative, transfer this case to the Middle District of Louisiana.

**RESPECTFULLY SUBMITTED:**

<u>/s/ *Kyle M. Keegan*</u>
Kyle M. Keegan
Louisiana Bar Roll No. 19942
Amber N. Robichaux
Louisiana Bar Roll No. 34061
Keegan, Juban, Lowe & Robichaux, LLC
5555 Hilton Avenue, Suite 205
Baton Rouge, Louisiana 70808
Telephone: (225) 364-3600
Facsimile: (225) 364-3608
kmk@keeganjuban.com
anr@keeganjuban.com

John R. Teakell
Law Office of John R. Teakell
2911 Turtle Creek Boulevard, Suite 300
Dallas, Texas 75219
Telephone: (214) 523-9076
Facsimile: (215) 523-9077
jteakell@teakelllaw.com

*Counsel for Defendants, Joshua McCoy, Chadwick Mitchell, McCoy Equity Holdings, LLC, Dynamic Group, LLC and DSI Energy Solutions, LLC*

35

**CERTIFICATE OF CONFERENCE**

I HEREBY CERTIFY that the plaintiff counsel opposes this motion to dismiss for lack of jurisdiction and transfer of venue.

*/s/ Kyle M. Keegan*
Kyle M. Keegan

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served upon all counsel of record via this court's e-filing (ECF) system on this 11th day of September, 2023.

*/s/ Kyle M. Keegan*
Kyle M. Keegan